```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____               │
│ DATE FILED: __3/22/13__              │
└─────────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DAVID CRUZ,                                  :

                       Petitioner,        :        10 Civ. 5460 (SHS) (DF)

                 -against-          :        **REPORT AND**
                                         **RECOMMENDATION**
BUREAU OF PRISONS, ERIC PFISTERER,           :
U.S. ATTORNEY, JAMES WALSH,
SUPERINTENDENT, et al.,                      :

                       Respondents.       :
-----------------------------------------------------------X

**TO THE HONORABLE SIDNEY H. STEIN, U.S.D.J.:**

      Pursuant to 28 U.S.C. § 2441, Petitioner *pro se* David (a/k/a Derrik) Cruz ("Petitioner")

challenges the denial by the Bureau of Federal Prisons (the "BOP") of his request for a

"*nunc pro tunc* designation" of a New York State correctional facility (where he is currently

incarcerated on a state sentence) as the place of his federal confinement, so that his state and

federal sentences could run concurrently. Petitioner requests that the Court "compel the Bureau

of Prisons to review his request . . . and grant Petitioner a concurrent designation."[1] For the

reasons that follow, I respectfully recommend that the petition be denied.

---

[1] Petitioner's Traverse and Memorandum of Law in Opposition to Respondent's Return
and Memorandum of Law in Opposition to Writ of Habeas Corpus, dated Feb. 8, 2011
("Traverse") (Dkt. 13), at 23.

## BACKGROUND

**A.    Petitioner's State and Federal Convictions and Sentences**

Petitioner was arrested on state charges in 1995, although it is somewhat unclear as to whether he was initially taken into custody as the result of a parole violation or on new charges.[2] In either event, later that year, while he was in state custody, he was indicted on entirely separate federal charges, in the United States District Court for the Middle District of Pennsylvania. (*See* Return, at 1-2.) Petitioner remained in state custody until, in October, 1995, the United States Marshals Service ("USMS") took custody of him, pursuant to a writ of *habeas corpus ad prosequendum*, for the purposes of his federal trial. (*Id.*) Petitioner was then federally convicted of drug charges and was sentenced by the federal district court on May 1, 1996, to 324 months in prison.[3] Although the Pre-Sentence Investigation Report (Johnson Decl., Ex. A) mentioned the pending state charges against Petitioner, the federal sentencing court's judgment made no reference to any potential state sentence that could result, should Petitioner eventually be convicted of those state charges.

Shortly after Petitioner's federal sentence was imposed, he was returned to state custody and was detained, on his pending state charges, by the New York City Department of

---

[2] Petitioner contends that he was initially arrested in May, 1995, by Pennsylvania police, on a fugitive warrant, extradited to New York, and sentenced to a six-month "hold" for parole violations "[o]n or about July/1995." (Traverse, at 1-2.) Respondent, however, asserts that Petitioner was arrested in July, 1995, by New York City police, on attempted murder and related charges. (*See* Respondent's Return and Memorandum of Law in Opposition to Writ of Habeas Corpus, dated Jan. 10, 2011 ("Return") (Dkt. 8), at 1; *see also* Declaration of Adam Johnson, dated Jan. 7, 2011 ("Johnson Decl.") (Dkt. 9), Ex. A.)

[3] This term was later reduced to 262 months pursuant to the retroactive crack-cocaine amendment. *United States v. Cruz*, No. 1:CR-95-204-01, 2008 WL 4671793 (M.D. Pa. Oct. 17, 2008).

Corrections.  (*See* Return, at 2; Johnson Decl., Ex. B.)  After a jury trial in state court, Petitioner

was convicted, under state law, of attempted murder, and in October, 1997, he was sentenced on

that charge to 12 ½ to 25 years in prison.  (*See* Johnson Decl., Ex. D, at 3.)  Petitioner is

currently serving his state sentence in the Sullivan Correctional Facility, a New York State

prison.

**B.      Petitioner's Request That His Sentences Run Concurrently**

By December, 2006, Petitioner began making inquiries to federal authorities regarding

his pending federal sentence.  (*See* Traverse, Ex. 3 (Letter from Randy S. Eternick to Derrick

Luis Cruz, dated Dec. 4, 2006).)  Petitioner sent several letters to the BOP's Designation and

Sentence Computation Center (the "DSCC") and other governmental units in 2008 and 2009,

requesting a *nunc pro tunc* designation that would allow his state and federal sentences to run

concurrently.[4]

After receiving Petitioner's request, the BOP sent a letter to the federal sentencing court,

asking for its "position on a retroactive designation in this case."  (Johnson Decl., Ex. I (Letter

from Delbert G. Sauers to Hon. William W. Caldwell, dated Feb. 16, 2009).)  In a letter dated

March 10, 2009, the sentencing court responded that it found "nothing that would warrant a

_____

[4] *See* Traverse, Ex. 4 (Letter from Petitioner to P.M. Laird, Warden, dated May 20, 2008, requesting "Legal Date Computation"); *see also* Traverse, Ex. 5 (Letter from J. Gatto to Petitioner, dated Nov. 10, 2008, advising Petitioner that requests for retroactive designation of state facility for concurrent service of federal sentence should be directed to the DSCC); *id.,* Ex. 6 (Letter from Petitioner to the DSCC, dated Dec. 30, 2008, requesting that the DSCC "consider running my federal sentence concurrent 'nunc pro tunc' with already serving sentence in the State of New York"); *id.*, Ex. 7 (Letter from Petitioner to the DSCC, dated Feb. 24, 2009, requesting status of previous request for *nunc pro tunc* designation); *id.*, Ex. 8 (Letter from Petitioner to Mary E. D'Andreas, Clerk of the United States District Court for the Middle District of Pennsylvania, dated Apr. 21, 2009, requesting Court to ask the DSCC to respond to request for *nunc pro tunc* designation).

3

concurrent sentence and object[ed] to a favorable designation by the Bureau of Prisons in this case." (*Id.*, Ex. J (Letter from Hon. William W. Caldwell to Delbert G. Sauers, dated Mar. 10, 2009).)

In May, 2009, the BOP informed Petitioner by letter that it had "determined that a 'nunc pro tunc' designation [was] not consistent with the goals of the criminal justice system." (Traverse, Ex. 9 (Letter from Delbert G. Sauers to Petitioner, dated May 19, 2009).) The BOP's letter stated that it had reviewed Petitioner's request "according to the factors provided in 18 U.S.C. § 3621(b)" (*id.*, at 1), and had determined that the second, third, and fourth factors listed in the statute were the relevant ones in Petitioner's case (*id.*). The BOP concluded that all three of those factors – "the history and characteristics of the prisoner," "the nature and circumstances of the offense," and "any statement by the court that imposed the [federal] sentence . . .," 8 U.S.C. § 3621(b)(2)-(5) – favored consecutive prison terms in Petitioner's case, not a *nunc pro tunc* designation. (*See* Traverse, Ex. 9.)

On June 29, 2009, Petitioner wrote to the then-director of the BOP, requesting a review of the agency's determination.[5] (*Id.*, Ex. 13 (Letter to Harley G. Lapin from Petitioner, dated June 29, 2009).) Petitioner states that he received no response. (*Id.*, at 4.)

---

[5] The BOP's multi-level Administrative Remedy Program for exhausting administrative claims did not apply to Petitioner because he was in state custody. *See* 28 C.F.R. 452.10(b) ("This Program applies to all inmates in institutions operated by the Bureau of Prisons, to inmates designated to contract Community Corrections Centers (CCCs) under Bureau of Prisons responsibility, and to former inmates for issues that arose during their confinement. This Program does not apply to inmates confined in other non-federal facilities.").

### C.   The Action in this Court

Petitioner commenced this action for relief pursuant to 28 U.S.C. § 2241, by a petition dated June 14, 2010 (later replaced by the operative Amended Petition, dated Sept. 28, 2010 ("Am. Pet.") (Dkt. 4)). As Petitioner is proceeding *pro se*, the Court reads his papers "liberally" and "interpret[s] them to raise the strongest arguments that they suggest." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003). Petitioner appears to challenge the BOP's interpretation of the law, the constitutionality of the BOP's purported authority to make the determination as to how his sentences should run, and the BOP's particular decision-making process in his case. (*See generally* Am. Pet.)

On January 10, 2011, the BOP ("Respondent"[6]) submitted a Return (Dkt. 8) and supporting Declaration (Johnson Decl. (Dkt. 9)). In its opposition, Respondent principally argues that Petitioner has misconstrued the law regarding when his federal sentence did, and should have, commenced, and that the BOP did not abuse its discretion in denying Petitioner's request for a retroactive determination that his federal sentence should run concurrently with his state sentence.

Petitioner submitted a Traverse on February 14, 2011 (Dkt. 13), setting out his arguments in greater detail. The Traverse also attaches additional documents not attached to the Amended Petition, most notably the series of letters between Petitioner and various BOP officials, in which Petitioner initially set out his request and reasons for a *nunc pro tunc* determination that his state

---

[6] The Amended Petition names the "Bureau of Prison[s], Eric Pfisterer, U.S. Attorney, James Walsh, Superintendent, et al." as Respondents (Am. Pet., at 1), but the BOP is the only named respondent that has appeared to oppose Petitioner's claims (*see* Return, at 1).

and federal sentences could run concurrently, and in which the BOP set out its reasons for denying the request.

## DISCUSSION

### I.   APPLICABLE LEGAL STANDARDS

#### A.   District Court's Power To Order That a Federal Sentence Be Served Consecutive to, or Concurrent with, a Not-Yet-Imposed State Sentence

Where an individual who is already facing state charges is transferred from state to federal custody to face separate federal charges, the federal government can interfere with the state's jurisdiction only for limited purposes, and must generally return the individual to state custody to serve any state sentence before taking the individual back into federal custody to serve his federal sentence. This is because "[t]he 'sovereignty which first arrests the individual acquires the right to prior and exclusive jurisdiction over him,'" jurisdiction that "'is not exhausted until there has been complete compliance with the terms of, and service of any sentence imposed by, the judgment of conviction entered against the individual by the courts of that first sovereignty.'" *Rosemond v. Menifee*, 137 F. Supp. 2d 270, 272-73 (S.D.N.Y. 2000) (quoting *In re Liberatore*, 574 F.2d 78, 89 (2d Cir. 1978)). The "transfer of an inmate to federal court pursuant to a writ of habeas corpus ad prosequendum does not amount to a relinquishment of primary jurisdiction." *Id.* In other words, in a case like this one, where a defendant is initially arrested by state authorities and then "borrowed" by federal authorities for the purpose of federal indictment, trial, and/or sentencing, the state retains primary jurisdiction throughout the federal proceedings. Even if the federal court imposes a sentence, the defendant cannot be taken into federal custody to serve that sentence until the exhaustion of the state's jurisdiction over him.

Absent further intervention, then, the defendant must complete his state sentence before commencing service of his federal one.

Where a defendant faces both federal and state convictions, the federal district court has the authority to order that its sentence be served concurrent with, or consecutive to, the defendant's state sentence. *See* 18 U.S.C. § 3584(a) (quoted *infra*, at n. 8). As with any aspect of a district court's sentence, however, the ultimate effectuation of the sentence falls to the BOP. The mechanism by which the BOP may effectuate the concurrent service of federal and state sentences where a federally convicted defendant is in primary state custody, in a state facility, is a product of the BOP's authority to "designate the place of the prisoner's [federal] imprisonment" under 18 U.S.C. § 3621(b). Under federal law, a federal sentence officially begins at the time the defendant is "received" in custody, "to commence service of sentence at[] the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). It is the BOP that determines which "detention facility" will be the place where the federal sentence is to be served, *see* 18 U.S.C. § 3621(b), and the BOP has the authority to "designate any available penal or correctional facility that meets the minimum standards . . . established by the Bureau, whether maintained by the Federal Government *or otherwise.*" *Id.* (emphasis added). The BOP thus has the discretion to select the state prison where an inmate is being held as the place of his federal confinement, allowing the federal and state sentences to run concurrently.

The BOP even has the authority to make such a designation after the fact (for example, once the state exhausts its jurisdiction by full imposition of its sentence, and turns the prisoner over to federal custody), "*nunc pro tunc*" to the date the state prison term commenced. *See Setser v. United States*, 132 S. Ct. 1463, 1468 n.1 (2012) (noting that BOP sometimes designates state facility as place of federal confinement "while the prisoner is in state custody, and

7

sometimes makes a *nunc pro tunc* designation once the prisoner enters federal custody"); *Barden v. Keohane,* 921 F.2d 476, 483-84 (3d Cir. 1990) (holding that BOP had discretion to consider inmate request for *nunc pro tunc* designation that would make state and federal sentences run concurrently); *see also McCarthy v. Doe,* 146 F.3d 118, 122-23 (2d Cir. 1998) (adopting *Barden* rule as law of Second Circuit).

In its recent decision in *Setser,* the Supreme Court held that a federal district court not only has the authority to order its sentence to run concurrently with, or consecutively to, an existing state sentence, but also has the authority to make a concurrency determination with respect to its federal sentence and a state sentence that is merely anticipated. *Setser,* 132 S. Ct. at 1468. The Court, however, did not directly address the limits of the BOP's discretionary authority to make such a determination itself, in a case where the district court remains silent as to how its federal sentence should run with any anticipated state prison term instead of explicitly exercising the court's authority to order concurrent or consecutive terms.

### B.   BOP's Discretionary Authority to Determine Concurrency

#### 1.   Scope of the BOP's Authority Prior To *Setser*

In this case, the BOP's determination of Petitioner's request for concurrency was made in 2009, before the Supreme Court issued its decision in *Setser.* At that time, courts in this circuit and elsewhere had understood that the BOP had the authority under its place-of-confinement authority (*i.e.*, under Section 3621(b)) not only to effectuate a district court's stated determination that a defendant's sentences should run concurrently, but also to make such a determination on its own. *See McCarthy,* 146 F.3d at 121-23 (2d Cir. 1998) (affirming authority of BOP to designate state facility as place of federal confinement *nunc pro tunc,* effectively

8

running state and federal sentences concurrently, even where sentencing court did not order concurrency).

Courts in this circuit had also held that prisoners had "a right to request the BOP to review whether a nunc pro tunc designation of their state facility as a site of federal incarceration would be appropriate, if the BOP did not on its own provide such a designation." *Mitchell v. Lara*, No. 11 Civ. 1540 (LBS), 2011 WL 5075117, at *3 (S.D.N.Y. Oct. 25, 2011).  A federal court could order the BOP to consider whether a particular prisoner's request for a *nunc pro tunc* designation should be granted, and could issue a non-binding recommendation in favor of such a designation. *See United States v. Pineyro*, 112 F.3d 43, 45 (2d Cir. 1997) (holding court's recommendation is "not binding," as district court had "no authority to *require* the BOP to credit [a defendant] with the time he spent in state custody" (emphasis added)); *United States v. Benitez*, No. 98 Crim. 874 (LAP), 2009 WL 4857491, at *3 (S.D.N.Y. Dec. 11, 2009) (ordering BOP to "promptly review" inmate's application and recommending that BOP grant request).

In determining whether to issue a *nunc pro tunc* designation in a particular case, the BOP would consider, at a minimum, the five factors listed in Section 3621(b):

> (1)    the resources of the facility contemplated;
>
> (2)    the nature and circumstances of the offense;
>
> (3)    the history and characteristics of the prisoner;
>
> (4)    any statement by the court that imposed the [federal] sentence–
>
>> (A)    concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>>
>> (B)    recommending a type of penal or correctional facility as appropriate; and

9

(5)     any pertinent policy statement issued by the Sentencing
Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b); *see also Levine v. Apker*, 455 F. 3d 71, 84 (2d Cir. 2006) (holding

consideration of all five factors "mandatory" but noting that factors are "non-exclusive").

In addition, the BOP had developed internal regulations specifically governing inmate

requests for *nunc pro tunc* designations. *See* Program Statement 5160.05 ("PS 5160.05" or the

"Program Statement") § 9(b)(4).  The Program Statement provided that, under *Barden*, the BOP

would "consider[] an inmate's request for pre-sentence credit toward a federal sentence for time

spent in service of a state sentence as a request for a nunc pro tunc designation." PS 5160.05

§ 9(b)(4).  The Program Statement then set out policies by which the BOP would exercise the

discretion contemplated by *Barden*. *See id.*  Among other things, the Program Statement

provided that, when the BOP received a request for a *nunc pro tunc* designation, the appropriate

BOP official would "send a letter to the sentencing court . . . inquiring whether the court has any

objections." PS 5160.05 § 9(b)(4)(c).  If the sentencing court expressed an opinion, the BOP

would consider that opinion along with the other factors listed in 18 U.S.C. § 3621(b), above.

The BOP's determination of whether to grant a *nunc pro tunc* designation and effectively to

allow a defendant's federal sentence to run concurrently with a state sentence would then be

subject to review by the courts, for abuse of discretion. *Mitchell*, 2011 WL 5075117 at *3

(citing *Barden* and *McCarthy*).[7]

---

[7] As far as the Court is aware, the BOP has not announced any changes to PS 5160.05 or
its application after *Setser*, *see* http://www.bop.gov/policy/progstat/5160_005.pdf, although, for
the reasons explained below, the continued viability of this Program Statement is unclear.

### 2.   The Scope of the BOP's Authority After *Setser*

The Supreme Court in *Setser* was called upon to construe 18 U.S.C. § 3584(a), which plainly authorizes federal courts to impose a federal sentence either concurrent with or consecutive to an already-existing state sentence,[8] but which both the petitioner (and the government), in *Setser*, had argued was not broad enough to authorize a federal court to make a concurrency determination regarding a state sentence that was not yet imposed. *See Setser*, 132 S. Ct. at 1467-68. The Court held that Section 3584(a) simply "does not cover" the situation where a state sentence is merely anticipated at the time of federal sentencing. *Id.* at 1467. Nonetheless, the Court found that, prior to the enactment of Section 3584, federal courts had the authority to make concurrency determinations in such situations, and that nothing in Section 3584 repealed that "pre-existing authority." *Id.*, at 1469. Thus, the Supreme Court definitively rejected the position that "the concurrent-vs.-consecutive decision" in circumstances like Petitioner's "is committed exclusively to the [BOP]." *Id.*, at 1468. The Court offered conflicting indications, however, as to whether the BOP retained any non-exclusive discretion to

---

[8]  Section 3584(a) provides:

> If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant *who is already subject to an undischarged term of imprisonment*, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

18 U.S.C. § 3584(a) (emphasis added).

11

make a concurrency determination where, as here, the sentencing court had not explicitly exercised its authority at the time of sentencing and instead was silent.

On the one hand, *Setser* can be read to suggest that, in such a circumstance, the BOP lacks authority to make a *nunc pro tunc* designation. In this regard, *Setser* emphasizes that, at least in the context of Section 3584(a), the concurrency decision is one "committed to the district court," and explains that, while Section 3621(b) (which, as noted above, allows the BOP to designate the place of confinement) "*is* a conferral of authority on the [BOP]," *id.*, at 1470 (emphasis in original), Section 3621(b) "does not confer the authority to choose between concurrent and consecutive sentences," *id.* Indeed, the Supreme Court specifically noted that Section 3621(b)'s requirement to consider "'the resources of the facility contemplated'" "confirm[ed] [the Court's] view that § 3621 is not a sentencing provision, but a place-of-confinement provision." *Id.*, at 1471.

On the other hand, *Setser* appears to accept that the BOP does have the authority to make the concurrency determination in at least some cases. To this effect, while the Supreme Court expressed the view that judges should be "responsible for" concurrency determinations with regard to yet-to-be-imposed state sentences, *see id.*, at 1472 n.5, the Court also recognized there are "some situations" where "a district court may have inadequate information and may forbear," *id.*, at 1473 n.6. This may have signaled that, in such situations, the determination may appropriately be left to the discretion of the BOP. *Setser* also accepted that the BOP may exercise its independent discretion in circumstances where "late-onset facts materially alter a prisoner's position and make it difficult, or even impossible, to implement his sentence." *Id.*, at 1473. Finally, the Court noted that it is the BOP "which ultimately has to determine how long the District Court's sentence authorizes it to continue" an inmate's confinement, *id.*, and pointed

12

out that the petitioner in the case before it was "free to urge the Bureau" to apply concurrency, if he believed that would best effectuate the sentencing court's judgment, *id.*

*Setser* thus leaves open two possibilities where, in a case like Petitioner's, the sentencing court did not explicitly exercise its authority to order consecutive or concurrent sentences: First, where the sentencing court was silent, it may be that the BOP's discretion should be guided not by the factors set out in Section 3621(b), but solely by its analysis of what the sentence "authorize[d]," 132 S. Ct. at 1473, or the district court intended. Second, in such a case, it may be that the BOP would still have the (non-exclusive) discretion to make the concurrency determination independently, based on the Section 3621(b) factors, as previously recognized by *Barden* and other pre-*Setser* cases.

The question of which of these possibilities is correct appears to be one of first impression in this circuit. *See Henriquez v. United States*, No. 12 Civ. 5590 (AKH), 2012 WL 6739422 (S.D.N.Y. Dec. 27, 2012) (citing *Setser,* but for proposition that prisoner must exhaust administrative remedies before bringing *habeas* petition; question of BOP's continued authority apparently not raised before court); *Mitchell v. Lara*, No. 11 Civ. 1540 (LBS), 2012 WL 1080290 (S.D.N.Y. Apr. 2, 2012) (analyzing BOP's determination under § 3621(b) for abuse of discretion without reference to *Setser*; issued days after *Setser* decided).[9]  For the reasons

---

[9] Other courts to have addressed the question are divided. *Compare Loveless v. Ziegler*, No. 5:11–cv–00991, 2012 WL 3614315, at *4 (S.D.W. Va. Aug. 21, 2012) ("The *Setser* decision however, made clear that the BOP's nunc pro tunc decision-making authority under § 3621(b) is not an exercise of sentencing authority [and] cast no doubt on the propriety of the BOP making independent determinations of whether to retroactively designate a state facility for service of a prisoner's federal sentence pursuant to the five factors listed in § 3621(b)."), *with Elwell v. Fisher*, Civ. No. 11-2595 (RHK/LIB), 2012 WL 2277850, at *5 (D. Minn. Apr. 25, 2012) ("The BOP's authority to make its own determination of whether a federal sentence is concurrent, by means of a nunc pro tunc designation, has been called into question by the United States Supreme Court's decision in *Setser v. U.S.*, 132 S. Ct. 1463 (2012).").

discussed below, however, the Court need not resolve the issue in this case, as, in either event, Petitioner's claims must fail.

## II.    PETITIONER'S CLAIMS

Petitioner raises several claims, all with the goal of obtaining an order from this Court directing that his federal sentence should run concurrently with his state sentence. Certain of Petitioner's claims, liberally construed, challenge either the BOP's initial construction of the governing law regarding the commencement date of his federal sentence, or the BOP's constitutional authority to make the determination as to how his federal sentence should run. In the alternative, Petitioner also claims that, in his case, the BOP abused its discretion in denying his request for a *nunc pro tunc* designation, by failing to consider all relevant factors and/or by relying on information that, in Petitioner's view, should not have been considered. This Court will address each of these claims, in turn.

### A.    Petitioner's Claim That, Under Governing Law, His Federal Sentence Automatically Began To Run in 1995

As a threshold matter, Petitioner argues that his federal sentence cannot, by its own terms, be read to run consecutively with any state sentence. In this regard, Petitioner argues that the federal sentencing judge did not direct his sentences to run consecutively, and could not have done so under Section 3584(a), referenced above. (Am. Pet., at 6; Traverse, at 14.) Instead, Petitioner contends either that the court ordered his federal sentence to being immediately, upon its imposition (Am. Pet., at 6), or that, if the sentencing judge is found to have been silent on this point, the court's silence must be construed to create a presumption of concurrent sentences (Traverse, at 16). Petitioner additionally argues that, as he was not yet subject to a state sentence at the time he was first taken into federal custody by the United States Marshals, his federal

14

sentence must be considered to have started as of his "first appearance in federal court." (Am. Pet., at 6.) These arguments have no merit.

First, as explained above, Petitioner's appearance in federal court pursuant to a writ of *habeas corpus ad prosequendum* did not create federal primary jurisdiction. The fact that, at the time, Petitioner may not yet have been serving or subject to a state sentence (*see* Traverse at 2 (asserting that his "parole hold had expired before he was sentence[d] in the District Court")) is irrelevant, as Petitioner was, in any event, being held by the state on pending state charges, and the state had never relinquished its primary jurisdiction.

Second, Petitioner's arguments based on the language of the sentencing court's judgment are misplaced. Petitioner quotes the sentencing court's judgment as stating that the "defendant is hereby committed to the custody of the [BOP]" and "is remanded to the United States Marshal." (Am. Pet., at 6.) Petitioner argues that, when this language is considered together with the fact that the sentencing judge did not specify any other date for the commencement of his sentence, the only conclusion that can be drawn is that the court expected his sentence to begin right away. (*See id.*). This argument ignores the rule that a prisoner "borrowed" from state authorities to face charges in federal court is not, as noted above, under primary federal custody. *See, e.g., Rosemond,* 137 F. Supp. 2d at 272-73; *see also Delima v. United States,* 213 F.3d 625 (table), 2000 WL 534248, at *1 (summary order) (2d Cir. 2000) ("When a federal court obtains a prisoner's presence for court proceedings pursuant to a writ of *habeas corpus ad prosequendum,* that individual is only on 'loan' from the state and must be returned to the state's custody at the conclusion of the proceedings."). Indeed, in the face of similar arguments, at least one court in this circuit has held that the USMS "acted properly" in returning a prisoner to state custody to face pending state charges, notwithstanding that the sentence "committed" the prisoner to BOP

15

custody. *Delima v. United States*, 41 F. Supp. 2d 359, 362-63 (E.D.N.Y. 1999) (where federal sentencing court had directed that the defendant be "committed to" BOP custody, this language "was not meant to override the requirement that the marshal return petitioner to the state upon disposition of the federal case"), *aff'd*, 213 F.3d 625 (table), 2000 WL 534248 (summary order) (2d Cir. 2000).

Third, there is no indication in the record that, at the time of sentencing, the sentencing judge affirmatively directed Petitioner's federal sentence to run concurrently with any later-imposed state sentence.

Fourth, the federal sentencing judge's silence as to whether Petitioner's federal sentence should run concurrently with, or consecutively to, any potential state sentence neither suggests that the court intended the sentences to be concurrent, nor creates a presumption of concurrency. If any intent by the sentencing court can be gleaned from its silence, it is most likely that the court intended Petitioner's sentences to run consecutively. On this point, the sentencing court was aware that Petitioner was facing pending state charges (arising from wholly different conduct than that giving rise to the federal charge) and was still in primary state custody. (*See* Johnson Decl., Ex. A (Pre-Sentence Investigation Report, noting pending state charges and that Petitioner was at the time in state custody).) By operation of the ordinary rules of primary jurisdiction, then, Petitioner could have been expected to serve his state sentence in full before beginning his federal prison term. Thus, while the sentencing court cannot be said to have explicitly chosen consecutive terms, the most reasonable interpretation of the court's silence is that the court understood that consecutive terms would be the default, either under

16

Section 3584(a)[10] or under the laws of primary jurisdiction. *See, e.g., Rodriguez v. Pitzer*, 76 F. App'x 519, 520 (5th Cir. 2003) ("[The petitioner]'s federal sentence provided no evidence that the sentencing (district) court intended that it be served concurrently with his pending state sentence. Because [the petitioner]'s presentence investigation report identified the pending state charges, we can assume that the sentencing court was aware of [the petitioner]'s pending state proceeding. . . . Given the absence of such intent, the BOP was well within its discretion to deny [the petitioner's]'s request for a nunc pro tunc designation.").

In support of his view that a presumption of *concurrency* should apply in his case, Petitioner relies heavily on a decision issued by the Eastern District of New York, more than 20 years ago, in *Germaine v. United States*, 760 F. Supp. 41 (E.D.N.Y. 1991). (*See* Traverse, at 16.) In *Germaine*, the petitioner, like Petitioner here, was in primary state custody during the pendency of both state and federal charges, was sentenced on the federal charges first, but remained in state custody through and after his state sentencing, and later sought a determination that his federal sentence should run concurrently with the state sentence rather than commence only after he was released from state custody. The reviewing court found for the petitioner, "[b]ased on the peculiar facts of [the] case . . . and fundamental principles of equity," and ordered that the petitioner be granted "credit" towards his federal sentence for his time in state custody. *Id.*, at 42-43. Noting that, in general, it is "equitable to presume that a federal sentence is concurrent with a pending state sentence, when a sentencing judge fails to consider the

---

[10] *See supra* at n.8; *see also U.S. v. Randolph*, 80 F. App'x 190, 195 (3d Cir. 2003) (holding that § 3584(a) gave rise to a presumption of consecutive sentences in cases involving not-yet-imposed state sentences). Although *Randolph* was decided after Petitioner's sentencing, and before *Setser* (which calls its reasoning into doubt), it arguably still sheds some light on the intent of the sentencing court here, to the extent the decision memorialized the then-existing state of the law in the Third Circuit, where Petitioner was sentenced.

pending state sentence," *id.*, at 43, the court also determined that, in the particular case before it, the sentencing court had, in fact, intended the federal sentence to commence from the date of sentencing, *id.*, at 42.

Unlike in *Germaine*, though, there is no basis for this Court to make any determination that the federal sentencing court in Petitioner's case had intended Petitioner's sentences to run concurrently. Not only are there reasons to assume the opposite, as noted above, but when the question was later put to the sentencing court directly by the BOP, the court expressed its opposition to concurrent sentencing in Petitioner's case. More fundamentally, *Germaine* appears to be an outlier, at best, limited to its "peculiar facts," *id.*, at 42, including the fact that the Petitioner in that case was convicted on federal and state charges stemming from the same set of facts, after he had been "arrested by a joint task force of federal and state agents," *id.*, at 41. Moreover, in finding a presumption of concurrency, *Germaine* appears to stand alone in the case law. Petitioner cannot, therefore, rely on *Germaine* to turn the sentencing court's silence in his case into a presumptively concurrent sentence.

Finally, if, by its silence, the sentencing court actually meant for Petitioner's sentences to run consecutively, then *Setser* makes clear that the court had the authority to make that determination, *see* 132 S. Ct. at 1467, and any argument by Petitioner challenging such authority must be rejected.

For all of these reasons, Petitioner's sentence cannot be found to have commenced automatically in 1995, by operation of any statute, default presumption, or order of the sentencing court.

**B.**    **Petitioner's Claim That the BOP's Determination Was Unconstitutional**

Petitioner appears to raise numerous constitutional challenges to the BOP's authority to deny his request for concurrency.  Among other things, Petitioner argues that, to the extent the BOP, and not the sentencing court, made the concurrency decision in his case, the BOP's decision violated the constitutional requirement of separation of powers.  Petitioner also appears to argue that, to the extent the sentencing court made the decision in response to the BOP's inquiry, his due-process rights were violated, as he was not afforded an opportunity to be heard by the court, prior to its stating its view on concurrency.  Liberally construed, the Amended Petition may also be read to raise double jeopardy and Eighth Amendment challenges to Petitioner's concurrent sentences.  Petitioner cannot prevail on any of these constitutional challenges.

**1.**    **Separation-of-Powers Challenge**

Petitioner argues that any delegation of authority to the BOP to determine whether federal and state sentences should run concurrently or consecutively raises separation-of-powers concerns.  (Am. Pet., at 10-12; Traverse, at 8.[11])  Petitioner's argument on this point consists mainly of unattributed, extensive quotations from two cases, *Abdul-Malik v. Hawk-Sawyer*, 403 F.3d 72, 76 (2d Cir. 2005) (quoted without attribution in Pet., at 8) and *Reynolds v. Thomas*, 603 F.3d 1144, 1153-54 (9th Cir. 2010) (Fletcher, J., concurring) (quoted extensively, without

---

[11] *See also* Traverse, at 12 (suggesting, seemingly in the context of his separation-of-powers argument, that the BOP has a "conflict[] of interest" in determining when sentences should run because, in Petitioner's view, it is in the agency's interest to have more prisoners incarcerated for longer periods of time).

attribution, in Petitioner's Traverse, at 10). Neither of those cases compels the holding Petitioner seeks.[12]

In *Abdul-Malik*, the Second Circuit confronted a habeas petition from a petitioner who, like Petitioner here, had been in state custody on pending charges, was removed to federal custody on a writ of *habeas corpus ad prosequendum*, was convicted and sentenced for a federal offense, was then returned to state custody and convicted and sentenced for state crimes, and was denied a *nunc pro tunc* designation by the BOP. *Abdul-Malik*, 403 F.3d at 73-74. The sentencing court had been silent on concurrency, which, the Second Circuit noted, may have been "just as well," *id.*, at 74, given the circuit split existing at the time (later resolved by *Setser*) as to whether the court would have had authority to order concurrency at all, in the situation presented. In light of the sentencing court's silence, the concurrency determination was made by the BOP. *Id.*, at 75-76. Although the Second Circuit noted that "[a] separation of powers issue arises when the same branch of government that prosecutes federal prisoners determines concurrency in lieu of the judge" and "respectfully invite[d] congressional consideration" of the underlying statutes due to the separation-of-powers issue,[13] it held that the petitioner "lack[ed] any ground for relief under current law." 403 F.3d at 73, 76. In other words, the Second Circuit found that the separation-of-powers issue was troubling enough to call to Congress' attention,

---

[12] Respondent never explicitly addresses Petitioner's separation-of-powers argument, but does "specifically den[y]," in a footnote, any allegation that Respondent has not addressed. (Return, at 1 n.1.)

[13] *See also Fegans v. United States*, 506 F.3d 1101, 1104 (8th Cir. 2007) ("[W]e agree with the Second Circuit that Congress should examine the issue because it implicates important federalism and separation of powers concerns.").

20

but that it did not create a violation of then "current law." *Id.* In the absence of any change in the law, *Abdul-Malik* thus forecloses Petitioner's claim.

The portion of *Reynolds* quoted by Petitioner also affords little support for his separation-of-powers argument. First, Petitioner's quotations from this Ninth Circuit decision are from a concurrence, 603 F.3d at 1161, not the majority opinion (which never reached the separation-of-powers question), and, second, in that concurrence, Judge Fletcher ultimately concluded that the BOP's actions in the case before the court did *not* violate the separation-of-powers principle. *Id.* at 1161. In fact, the judge wrote:

> In this case, the BOP asked the federal sentencing judge whether he wanted Reynolds's sentence to be concurrent with or consecutive to the state sentences. When the federal judge declined to state a preference, the BOP used a permissible rule of construction, based on § 3584(a), to conclude that the federal judge's silence meant that Reynolds's sentence should be consecutive. (Later, following another *nunc pro tunc* request by Reynolds, the BOP again solicited the federal judge's view. The judge expressed that he had "no objection," and the BOP granted the request.) In this circumstance, I would conclude that the BOP's earlier denial of Reynolds's request for a *nunc pro tunc* designation was based on a permissible interpretation of what the federal sentencing judge intended, and that its denial thus did not violate separation of powers.

*Id.*

In *Setser*, the Supreme Court did express its preference for the sentencing court, and *not* the BOP, to make the concurrency determination in a case like this one, *see* 132 S. Ct. at 1471 (expressing the "desideratum that sentencing not be left to employees of the same Department of Justice that conducts the prosecution"), but the Court did not expressly find that the BOP, as an agency of the Executive branch, would never be permitted to make *nunc pro tunc* concurrency determinations. Further, there is no basis for finding that the BOP actually violated the

21

separation of powers in this particular case.  As discussed above, the sentencing court's silence, if anything, suggested that the court's intention was for Petitioner's sentences to run consecutively, and, to the extent that intent was not clear, the BOP, as it did in *Reynolds*, asked the court for its position on Petitioner's request for a *nunc pro tunc* designation, and the court then unequivocally expressed the position that Petitioner's sentences should be consecutive. Accordingly, even if the BOP lacked the authority to make the determination in Petitioner's case, its denial of Petitioner's request for a *nunc pro tunc* designation was apparently consistent with the intent of the sentencing court.  Under these circumstances, Petitioner has not raised a cognizable separation-of-powers claim.

### 2.      Due -Process Challenge

Construing Petitioner's due-process arguments in the light most favorable to him, this Court understands Petitioner to be claiming that his constitutional due-process rights were violated by (1) the out-of-court procedure utilized by the BOP to decide his request for a *nunc pro tunc* designation, and (2) the BOP's reliance on communications with the sentencing court that were *ex parte* and afforded Petitioner no opportunity to object. (*See* Am. Pet., at 4-5, 8; Traverse, at 13-14.)[14]

As to the first of these points, the Second Circuit has expressly approved the procedure used by the BOP to decide prisoner requests for *nunc pro tunc* designations.  *See, e.g., McCarthy*, 146 F.3d 118 (adopting *Barden* holding that BOP has discretion to evaluate, independently, requests for *nunc pro tunc* designations); *see also Delima*, 2000 WL 534248 at *1

---

[14] In a handwritten addendum to his typed Amended Petition, Petitioner states that he "also request[s] to challenge the decision rendered by the Court." (Am. Pet., at 9.) The meaning of this request is unclear, but its seems most likely that Petitioner is still seeking an opportunity to be heard by the sentencing court.

(rejecting due-process challenge to USMS's return of Petitioner to state custody after federal sentencing, and noting availability of various avenues to seek concurrent sentencing, including, "[m]ost importantly . . . the right *nunc pro tunc*[ ]to petition the [BOP] to designate the facility in which he served his state sentence as the site of his federal sentence"). Nothing in *Setser* called this procedure itself into question, and, in fact, as mentioned above, the Supreme Court expressly noted that the petitioner in that case "was free to urge the [BOP]" to make a determination in his favor, crediting, toward his federal sentence, time he had served in state custody. *Setser*, 132 S. Ct. at 1473.

As to Petitioner's second point, Petitioner argues – seemingly with reference to the sentencing court's expressed objection to a *nunc pro tunc* designation in his case – that due process required that he "(1) 'not be sentenced based on material false information,' (2) 'not be sentenced based on a misapprehension of the fact[s],' and (3) 'be given notice and an opportunity to contest the facts upon which sentencing authority relied in imposing the sentence.'" (Traverse, at 13-14 (unattributed quotations; *but see Torres v. United States*, 140 F.3d 392, 404 (2d Cir. 1998) (giving similar list of three due-process requirements in sentencing)).)

Petitioner, however, has not pointed to any "material false information" that was before the sentencing court at any time, nor has he shown that the sentencing court "misapprehended" any facts in stating its objection to concurrency in Petitioner's case. As clarified by *Setser*, a sentencing court has the authority to determine concurrency at the time of a defendant's sentencing. If the court does not do so at that time, then it is doubtful that there would be any constitutional bar to the BOP seeking, later, to clarify the court's position on the matter, based on the same facts that would have been available to the court at the time of sentencing. Petitioner

seems to be arguing that *new* facts – specifically relating to his record in prison and purported

rehabilitation – should have been placed before the sentencing court, and that, in the absence of

such information, the court would not have understood the *true* facts that should have influenced

its response to the BOP. This argument is misplaced, as the question that was properly before

the BOP was how best to effectuate the sentence that the court intended to imposed, not whether

that sentence should have been modified.[15]

Further, Petitioner has not shown that he was denied the opportunity to contest the facts

that the BOP placed before the sentencing court. At sentencing, Petitioner had the opportunity to

contest the description of the pending state charges, as referenced in the presentence

investigative report (Johnson Decl., Ex. A), and their relevance. The BOP's later *ex parte* letter

to the sentencing court contained only one new "fact" – the length of the sentence Petitioner

eventually received (*see* Johnson Decl., Ex. I) – a fact that Petitioner concedes was correct.

---

[15] Once imposed, a federal prison sentence cannot be modified, except by direction of the courts, and then only in three limited circumstances. 18 U.S.C. § 3582(c)(2). Petitioner has already sought, and received, a modification under one of these exceptions, based on a change in the sentencing guidelines. *See Cruz*, 2008 WL 4671793 (granting modification under § 3582(c)(2)). Petitioner could also conceivably invoke the exception for "extraordinary and compelling circumstances," but a modification based on such circumstances would only be possible "upon motion of the Director of the [BOP]." 18 U.S.C. § 3582(c)(1)(A). Petitioner may request that the Director of the BOP move the sentencing court for a modification on his behalf; if that request is denied, he would need to exhaust his administrative remedies before raising a claim here. *See Porges v. Zickefoose*, No. 3:08-CV-785 (RNC), 2008 WL 4596640 (D. Conn. Oct. 15, 2008) (noting petitioner's request for release under § 3582(c), but ultimately denying petition for failure to exhaust administrative remedies). If Petitioner does make and exhaust such a request, but does not receive the relief he seeks, there is "some limited authority for the proposition that a district court might recommend that the BOP move for a sentence modification." *Lucas v. United States*, No. 11–CV–2229 (CBA), 2011 WL 4056060, at *2 (E.D.N.Y. Sept. 12, 2011). The permissibility or advisability of such a recommendation is not currently before this Court.

24

Thus, Petitioner has not shown that any new facts placed before the sentencing court are facts that he would have contested.

Overall, Petitioner has not demonstrated that the process used by the BOP to determine his request for a *nunc pro tunc* designation deprived him of due process.

### 3.    Double Jeopardy Challenge

Petitioner notes that the state attempted-murder charges that were pending against him at the time of his federal sentence were considered by the federal sentencing court, under the federal Sentencing Guidelines, as part of his past criminal history. (*See* Traverse, at 18 (noting that, in part because of his state charges, the federal court imposed a sentence under Guidelines "category four").) Petitioner then argues that the BOP should not have considered his past criminal history again, when determining whether to issue a *nunc pro tunc* designation. (*Id.* at 19-20.) Construed liberally, Petitioner's "disagree[ment] with the double counting of information relied upon to enhance sentence and to order sentences to be subject to consecutive terms" (Traverse, at 20) may be an attempt to raise a challenge under the Double Jeopardy Clause of the Constitution, *see* U.S. Const., amend. V. Petitioner, however, has offered no legal support for such an argument, and this type of challenge to the timing of his sentence would appear to be misplaced, given that the Supreme Court has held that imposition of enhanced sentences based on criminal history or recidivism is not "either a new jeopardy or additional penalty for the earlier crimes, but instead [is] a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." *Witte v. United States*, 515 U.S. 389, 400 (1995) (internal quotations and citation omitted).[16]

---

[16] Petitioner also argues that Section 5G1.3 of the federal Sentencing Guidelines "operates to mitigate the possibility that the fortuity of two separate prosecutions will grossly

4.    **Eighth Amendment Challenge**

Petitioner also contends that the decision to run his sentences consecutively violated his purported Eighth Amendment right against "excessive imprisonment." (Traverse, at 20.) As the Eighth Amendment contains no guarantee against "excessive imprisonment" as such, Petitioner is presumably arguing that the total duration of his consecutive terms would be so disproportionate to his crimes as to constitute "cruel and unusual punishment." *See Graham v. Florida*, 130 S.Ct. 2011, 2021 (2010) (reviewing Supreme Court case law addressing "proportionality" of length of imprisonment under Eighth Amendment).  Establishing such a constitutional violation is "difficult," as the Eighth Amendment contains only a "'narrow proportionality principle,' that 'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are "grossly disproportionate" to the crime.'" *Id.* (quoting *Harmelin v. Michigan*, 501 U.S. 957, 997 (1991)).

Petitioner argues that his total expected period of incarceration is excessive for the underlying state and federal crimes.  (Traverse, at 20.)  If, however, the Court considers the combined length of his consecutive sentences – for attempted murder and drug charges – in light of the totality and severity of those charges, Petitioner cannot possibly show that a combined sentence of 526 months (Traverse, at 20) for those charges could be considered "grossly disproportionate" to the crimes.  *See Graham*, 130 S.Ct. at 2021 (reviewing sentences held by Supreme Court not to be unconstitutionally disproportionate, including "25 years to life for the

---

increase a defendant's sentence." (Traverse, at 17-18 (quoting *Witte,* 515 U.S. at 405).) That section, however, applies only to a federal court making sentencing determinations in the face of an already existing state sentence. *See* USSG § 5G1.3 (1995).

26

theft of a few golf clubs," "life with the possibility of parole for a defendant's third nonviolent felony, the crime of obtaining money by false pretenses," and "40 years for possession of marijuana with intent to distribute and distribution of marijuana").[17]

### C.   Petitioner's Claim That the BOP Abused Its Discretion in Denying His Request for a *Nunc Pro Tunc* Designation

Apart from his challenge to the BOP's authority to make the concurrency determination in his case, and his other constitutional challenges, Petitioner claims, in the alternative, that the BOP's denial of his request for a *nunc pro tunc* designation constituted an abuse of discretion because the BOP did not properly consider all of the factors set out in 18 U.S.C. § 3621(b). Petitioner may also be seeking to claim that the BOP abused its discretion by relying on an erroneous interpretation of 18 U.S.C. § 3584 – specifically, the interpretation, rejected by the Second Circuit and implicitly rejected by the Supreme Court, that a sentencing judge's silence in a situation like Petitioner's creates a presumption, under that statute, that federal and state sentences should run consecutively. *See McCarthy*, 146 F.3d at 121-22 (holding that "the presumption that the terms of imprisonment imposed at different times run consecutively does not apply" to a defendant who was "[not] already subject to his state sentence when his federal sentence was imposed"); *see also Setser*, 132 S.Ct. at 1470 (noting in dicta that "the last two sentences of § 3584(a)" create presumption from court's silence in "two common situations," neither of which involves federal court issuing sentence before state court).

---

[17] Petitioner also complains that the federal detainer lodged against him has denied him "certain opportunities," including the ability to participate in certain rehabilitation programs or to be transferred to lower-classification facilities.  (Am. Pet., at 8-9; *see also* Traverse, at 6-7, 20-21.)  Petitioner does not argue that his current conditions are in and of themselves unconstitutional under the Eighth Amendment, and this Court is unaware of any authority supporting Petitioner's apparent suggestion that the BOP should grant a *nunc pro tunc* designation merely because it might improve Petitioner's conditions in state prison.

1. **The Requirement That All Five of
the Section 3621 Factors Be Considered**

To the extent that, in the wake of *Setser*, the BOP may still be found to have the authority

to grant a *nunc pro tunc* designation to a prisoner seeking to have his state and federal sentences

run concurrently, that authority, as discussed above, would derive from the BOP's more general

authority to designate the place of federal confinement under 18 U.S.C. § 3621(b).  That section

provides, in relevant part, that the BOP "may designate any available penal or correctional

facility . . . that the Bureau determines to be appropriate and suitable, considering [five

enumerated factors]."  *Id.*  The Second Circuit has held, in a different context, that the five

factors are "mandatory but non-exclusive."  *Levine v. Apker*, 455 F. 3d 71, 84 (2d Cir. 2006)

(rejecting BOP contention that it was not required to consider all § 3621(b) factors in

determining prisoners' suitability for "community corrections centers").  Arguably, then, the

BOP would abuse its discretion, by exceeding its statutory authority, if it were to designate a

facility of incarceration without considering all five factors.  *See id.*

In claiming that the BOP abused its discretion in denying his request for a *nunc pro tunc*

designation, Petitioner principally argues that the BOP failed to take into account all evidence

relevant to the third enumerated factor in Section 3621(b) – *i.e.*, "the history and circumstances"

of the prisoner.  (*See* Am. Pet., at 7; Traverse, at 5-8; *see also* 18 U.S.C. § 3621(b).)  More

specifically, Petitioner argues that, in connection with this factor, the BOP should have

considered his rehabilitation and positive accomplishments while in prison, but failed to do so.

(*See* Traverse, at 5-9 ("Petitioner avers, he is not the same person" as when convicted; listing

28

accomplishments).[18])  Petitioner also argues that the BOP improperly considered criminal conduct that occurred when Petitioner was a minor, and effectively "double counted" his state offenses by using them as a reason for consecutive service of his sentences, after the same offenses had already been used by the sentencing court to enhance Petitioner's federal sentence. (*See* Am. Pet., at 6-7; Traverse at 17-19.)  Essentially, Petitioner is arguing that, in making its determination, the BOP should have considered his rehabilitation while in state prison, but should not have considered his criminal history.  This argument is not persuasive.

The BOP's letter to Petitioner, denying his request for a *nunc pro tunc* designation, recites that the BOP did consider his "history and characteristics," and a worksheet that the BOP has produced reflects this, as well.[19]  These documents show that the BOP found that Petitioner's criminal history, which it set out, favored consecutive sentencing.  (*See* Traverse, Ex. 9, at 1-2.) The plain meaning of "history" permitted the BOP to consider those criminal incidents that Petitioner claims it should have ignored, and, in any case, the BOP was entitled to consider

---

[18] Petitioner attaches, to his Amended Petition and Traverse, voluminous records of those accomplishments.  (*See, e.g.,* Am. Pet., Ex. A (certificate of completion for 24 hours of HIV/AIDS education and peer counseling); Am. Pet., Ex. B (certificate of completion for aggression replacement training program); Am. Pet., Ex. C (certificate of completion for 30 weeks of Narcotics Anonymous Group); Am. Pet. Ex. D (certificate of completion for basic course in nonviolent conflict resolution); Am. Pet., Ex. F (High School Equivalency Diploma and transcript); Am. Pet., Ex. G (certificate of achievement for summer league basketball); Am. Pet., Ex. I ("Employability Profile Report of Vocational Training"); *see also* Traverse, Ex. 20 (American Bible Academy certificates and grade reports); Ex. 22 (Occupational Training Certificate in Custodial Maintenance); Ex. 24 (various other certificates for participation in and completion of prison programs).)

[19] *See* Traverse, Ex. 9, at 1 (stating that the BOP had "determined that the relevant factors under the statute are (2), (3), and (4)"); *see also* Return, at 3-4 & n.2; Johnson Decl., Ex K (BOP worksheet stating decision to deny Petitioner's request was "based upon factors 2, 3, and 4"). The BOP apparently considered the remaining two factors – (1) (the "resources of the facility contemplated") and (5) ("any pertinent policy statement . . .") – only enough to conclude that they were irrelevant under the circumstances.

factors in addition to the listed five. *Levine*, 455 F.3d at 84. Petitioner is thus incorrect that the BOP considered information that it should have ignored.

Furthermore, although information pertaining to his alleged rehabilitation was arguably relevant to Petitioner's "characteristics," Petitioner points to no authority requiring the BOP to consider such post-incarceration information. Indeed, given that § 3621(b) is primarily concerned with place-of-imprisonment determinations, which are generally made at the beginning of a term of incarceration, it makes little sense to say that the statutory factors require consideration of post-incarceration events. *See, e.g., Mitchell*, 2011 WL 5075117, at *6 ("18 U.S.C. § 3621(b) requires prison officials to consider features of the prisoner's case that pre-exist his incarceration").[20]

## 2.   The BOP's Incorrect Interpretation of 18 U.S.C. § 3584

In addition to noting its analysis of the relevant statutory factors under Section 3621(b), the BOP's letter to Petitioner denying his request also included this sentence: "Pursuant to Title 18 U.S.C. § 3584(a), [m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." (Traverse, Ex. 9, at 2.) The BOP then concluded its letter by stating that, "[b]ased on the foregoing" (*id.*), Petitioner should not receive a *nunc pro tunc* designation.

As discussed above, the Supreme Court, in *Setser*, held that Section 3584 "does not cover" the situation presented by Petitioner's case, where the state sentence had not yet been

---

[20] To the extent Petitioner is arguing that the BOP must consider his rehabilitation evidence as evidence of "inmate disciplinary history" and "institutional adjustment" under Program Statement 5160.05, he is incorrect. The Program Statement does not require the BOP to consider those factors in cases, such as this one, where the sentencing Court responds to the BOP's inquiries regarding concurrency.

imposed at the time of the federal sentencing. *Setser*, 132 S. Ct. at 1467.  Moreover, prior to

*Setser*, the Second Circuit had held that Section 3584 did not create any default sentencing rule

in such a situation.  *See McCarthy*, 146 F.3d at 121-22.  A BOP determination based on a

contrary interpretation of Section 3584(a) – as opposed to a determination based on the factors

set out in Section 3621(b) – might therefore constitute an abuse of discretion.  *See id.*, at 122

(noting that BOP "was therefore incorrect to rely on § 3584(a) as grounds for denying

defendant's request"); *see also id.* at 123 ("Where § 3584(a) applies, of course, the Bureau must

follow the presumptions set out therein.  In a case such as this, however, where § 3584(a) does

not apply, the Bureau should exercise its discretion under § 3621(b) to review petitioner's

request for *nunc pro tunc* designation.").

        Nonetheless, the BOP's apparently erroneous reading of Section 3584(a) in this case was

immaterial to the BOP's determination, as the relevant factors under Section 3621(b) in any

event weighed in favor of consecutive sentencing.  (*See* Traverse, Ex. 9, at 2.)  Accordingly, as

the denial of Petitioner's request for a *nunc pro tunc* designation was both consistent with the

intent of the sentencing court *and* reasonable in light of the five factors set forth in Section

362(b), there is no basis for the Court to recommend to the BOP that it revisit that determination.

## CONCLUSION

        For all of the foregoing reasons, I respectfully recommend that Petitioner's Petition for a

writ of habeas corpus be dismissed.

        "[N]o certificate of appealability is necessary" for an appeal from the denial of a petition

for habeas relief brought under 28 U.S.C. § 2241.  *Jennings v. Schult*, 377 F. App'x 97 (2d Cir.

2010) (Summary Order).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (adding three days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Sidney H. Stein, United States Courthouse, 500 Pearl Street, Room 1010, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Stein. FAILURE TO FILE OBJECTIONS WITHIN 14 DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983). If Petitioner does not have access to cases cited herein that are reported on Westlaw, he may request copies from Respondent's counsel. *See* Local Civ. R. 7.2 ("Upon request, counsel shall provide the pro se litigant with copies of such unpublished cases and other authorities as are cited in a decision of the Court and were not previously cited by any party.").

Dated:  New York, New York
        March 22, 2013

                                        Respectfully submitted,

                                        *illegible signature*
                                        DEBRA FREEMAN
                                        United States Magistrate Judge

Copies to:

Hon. Sidney H. Stein, U.S.D.J.

Mr. David Cruz
(97-A-7253)
Sullivan Correctional Facility
P.O. Box 116
Fallsburg, NY 12733-0116

Respondent's counsel (via ECF)